IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASEY BOREK, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 11 C 1154 |
| v. | ) ) Honorable William J. Hibbler |
| SUDLER PROPERTY MANAGEMENT, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Casey Borek filed suit, pro se, against his former employer, Sudler Property Management, alleging discrimination in violation of the American with Disabilities Act, as well as discrimination based on national origin in violation of Title VII. Sudler seeks an order from the Court either dismissing Borek's complaint or granting summary judgment in Sudler's favor.

For the reasons set forth below, the Court GRANTS Defendant's Motion for Summary Judgment as to the ADA claim, but DENIES the Motion as to the national origin discrimination claim.

**I. Factual Background**

The following facts are taken from Defendant's Rule 56.1 statement, from the record attached to Defendant's Rule 56.1 statement, from Plaintiff's complaint and the many documents attached thereto, and from Plaintiff's responses to Defendant's Rule 56.1 statement and motion.

Casey Borek, a native of Poland, holds a Ph.D. in mechanical engineering. (Educational credential evaluator form, Doc. 1 at 28.) Before his employment with the

1

Defendant in this case, it appears that Borek worked as a technician for one or two Chicago-area steel casting manufacturers. (11/15/02 letter from G. Carpenter, Doc. 1 at 21; 12/14/02 letter from J. Suerth, Doc. 1 at 22; 04/04/06 letter from R. Barnett, Doc. 1 at 24.) In approximately April 2006, the castings company where Borek worked declared bankruptcy and shut down, and Borek was led to look for other work.

On July 30, 2006, Borek began working as a maintenance man at the Ritchie Court Condominiums in the Gold Coast neighborhood of Chicago. At first, Borek's duties mainly involved cleaning, garbage disposal, landscaping, and servicing the swimming pool. Borek was managed by an independent property management company called Sudler Property Management, which the condo association hired to oversee building maintenance.

On December 31, 2006, Borek suffered a heart attack necessitating quadruple bypass surgery. (Doc. 1 at 8.) For the next three months, Borek recovered at home and attended regular rehabilitation. (*Id.*) He returned to work on April 1, 2007 with a letter from his doctor stating that he was fit to work. (*Id.*) Borek returned to work in a promoted position, assistant to the new chief engineer, which involved repair and maintenance of the building's mechanical systems and common areas. (Doc. 19 at 22-23.) Borek also performed handy-man-type services for building residents, which were outside of his normal duties and were paid for by the residents rather than the condo association. After serving in that position for two year, Sudler offered Borek the position of chief engineer. Borek accepted the promotion and moved into an apartment in the condo building. (4/6/09 Sudler announcement to residents, Doc. 19 at 21.)

Shortly after his promotion, Borek injured his hand on the job. He was taken to Northwestern Memorial Hospital's emergency room, where he underwent surgery. (4/14/09 Emergency room discharge form, Doc 19-1 at 7.) For two weeks, Borek was unable to work. On May 8, 2009 Borek returned to work, and alleges that his relationship with Sudler manager, Mary Pat, began to deteriorate at that time. Borek alleges that Pat laughed at and made fun of his accent, stopped funneling work to him, and ignored his advice about important maintenance issues. Borek also alleges that Pat treated him differently than other maintenance workers by disallowing him from performing handy-man services to residents and by more closely scrutinizing his requests for vacation and sick leave.

On October 15, 2009 Mary Pat's boss, the building supervisor, approached Borek about his strained relationship with Pat. Borek told the supervisor that he felt ignored and mistreated, and offered to accept a demotion from chief engineer to assistant engineer as a means of minimizing contact with Pat. (Doc. 1 at 12-13.) On October 22, 2009, Sudler announced to building residents that Borek would be serving as assistant engineer instead of chief engineer. (10/22/09 Sudler announcement to residents, Doc. 19 at 20.)

Borek served in the assistant position for the next year, during which the alleged discrimination continued. He believed that Mary Pat was looking for a reason to fire him. (Doc. 1 at 13.)

On October 11, 2010, Borek was terminated. He received a Sudler-issued employee termination report listing the reasons for his termination as: "dishonesty," "quality of workmanship," and "conduct endangering safety and health of others." (10/19/10 Employee disciplinary report, Doc. 1 at 31-34.) Borek alleges that the

termination was discriminatory. Borek suffered a major depressive episode following his termination, for which he received psychiatric treatment from October 12, 2010 to at least February 4, 2011. (2/4/11 Letter from S.J. Puszkarski, Doc. 1 at 18.)

Borek has brought claims against Sudler Property Management for discriminatory treatment and termination in violation of both the Americans with Disabilities Act and Title VII.

## II. Legal Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted only when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on its pleadings. *See Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001). Instead, the party that bears the burden of proof on an issue at trial or in a case must affirmatively demonstrate, with admissible evidence that a genuine issue of material fact exists that requires a trial. *See Hemsworth*, 476 F.3d at 490.

## III. Analysis

Defendant Sudler Property Management argues that Borek's claim under the Americans with Disabilities Act (ADA) fails because Borek has not alleged or demonstrated that he has a "disability" as that term is defined under the ADA. Sudler also argues that Borek's Title VII employment discrimination claim is fatally flawed because Sudler was not technically Borek's employer.

### A. Disability Claim

To make out a *prima facie* case of discrimination under the Americans with Disabilities Act, a Plaintiff must demonstrate that he *has* a disability, *had* a disability, or is *regarded as having* a disability. 42 U.S.C. § 12102(2). To qualify as a "disability," the alleged impairment must be one that significantly limits one or more major life activities. *Id.; Nese v. Julie Nordic Const. Co.,* 405 F.3d 638, 641 (7th Cir. 2005). It is also important to note that short-term, temporary restrictions, with little or no long-term impact, are not substantially limiting and do not render a person disabled for purposes of the ADA. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(j); *Serednyi v. Beverly Healthcare, LLC,* 656 F.3d 540, 554 (7th Cir. 2011); *Waggoner v. Olin Corp.,* 169 F.3d 481, 484 (7th Cir. 1999).

Borek fails to identify any major life activities that were impaired by either his heart attack or hand injury. Instead, the record indicates that each of those medical events led to a period of temporary impairment followed by a fully-functional return to work. First, regarding the heart attack, Borek states that, after recuperating for four months, he returned to work as an assistant engineer with a letter from his doctor stating he could work. (Doc. 1 at 8.) He also states that, after his return, he "worked hard to

5

keep the building in good condition" and "did a very good job," which was "appreciated and complimented" by his manager. (*Id.* at 8.) Borek also states that he received a "very fast promotion" after his return to work. (*Id.* at 9.) There is no indication that Borek's heart attack substantially limited Borek's life activities following his four-month recuperation period. To the contrary, Borek's own pleadings indicate that he was not impaired in any way when he returned to work.

Second, regarding the hand injury, Borek sates that his hand healed in three weeks, at the end of which his doctor advised that he could return to work. The medical records Borek attached to his response indicate that Borek suffered "multiple lacerations of his right palm" which necessitated removal of nonviable tissue and application of a skin graft. (4/20/09 Report of Dr. Harris, Doc 19-1 at 9.) The records also indicate that Borek wore a splint on his hand for some period after that operation. (Northwestern Memorial Hospital medical records, Doc. 19-1 at 7-9.) There is no indication that Borek's functioning was impaired in any way after he returned to work. In fact, in discussing his demotion, Borek states that he was "convinced" he could "work with no problems" in the assistant engineer role. (Doc. 1 at 14.) There is also no evidence that Sudler regarded Borek as having a disability. Thus, Borek has failed to meet his burden of showing that either his heart attack or his hand injury constituted a disability under the ADA. Sudler is entitled to judgment as a matter of law on that claim.

### B. Discrimination claim

Sudler next argues that it cannot be liable for employment discrimination under Title VII because it was not technically Borek's employer. (Def. St. ¶ 7 ("Plaintiff was at all relevant times an employee of Ritchie").) It is well understood that an employer-

6

employee relationship must predicate a claim for employment discrimination under Title VII. *Robinson v. Sappington*, 351 F.3d 371, 332 (7th Cir. 2003). In identifying an employer-employee relationship, courts look beyond the technical dictates of employment agreements or human resource forms and instead look to "the economic realities of the relationship and the degree of control the employer exercises" over the employee. *Heinemeier v. Chemetco, Inc.*, 246 F.3d 1078, 1082 (7th Cir. 2001) (citations and internal quotations omitted). In administering this "economic realities" test, courts balance the following five factors:

> (1) the extent of the alleged employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance or operations, (4) method and form of payment and benefits, and (5) length of job commitment and expectations.

*Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378-79 (7th Cir. 1991). The first factor is regarded as the most important, because an employer-employee relationship is likely to exist where a defendant has the right to control the means and manner of an individual's performance and to direct the work of that individual. *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378-79 (7th Cir. 1992).

Sudler argues that there was no employer-employee relationship on which Borek could predicate his Title VII claims. The only support Sudler cites for that contention is (1) an affidavit of senior vice president Henry G. Binswanger (Doc. 15-2); and (2) the management agreement entered into by Sudler and the Ritchie Court condo association (Doc. 15-2, Ex. 1). Those documents do not aid the Court in understanding the economic realities of Sudler and Borek's employment relationship.

7

The rest of the record indicates that Sudler had substantial, if not exclusive, control over Borek's employment. His job duties as assistant manager were laid out in a detailed employee procedures and policies manual, which Sudler issued. (Doc. 19 at 22-23.) The manual states that "Sudler reserves the right to amend the policy from time to time," which indicates that Sudler controlled both the general employment policies governing Borek's work as well as his specific job duties. Borek also attached a Sudler-issued payroll form indicating that he was hired by Sudler. (Doc. 19 at 12.) Finally, he attached two "Employee Disciplinary Reports," written on Sudler letterhead, indicating that Sudler fired Borek. (Doc. 19 at 10-11.) Taken together, those documents are more than sufficient to raise a factual dispute concerning whether Sudler was Borek's employer for purposes of Title VII liability. The Court must, therefore, deny Sudler's Motion to Dismiss or for Summary Judgment on that claim.

## CONCLUSION

For the above reasons, the Court GRANTS Defendant's Motion for Summary Judgment as to Borek's ADA claim, but DENIES the Motion as to his national origin discrimination claim.

IT IS SO ORDERED.

_12/27/11_
Dated

Hon. William J. Hibbler
United States District Court